Fred H. WOHLENBERG, Independent Executor of the Estate of Charles H. Wohlenberg, Deceased, Appellant,

v.

Anna WOHLENBERG, a Feme Sole, et al., Appellees.

No. 6236.

Court of Civil Appeals of Texas, El Paso.

Sept. 20, 1972.

Rehearing Denied Oct. 11, 1972.

Allan L. Poage, El Paso, for appellant.

Ronald R. Calhoun, Scott, Hulse, Marshall & Feuille, Schuyler B. Marshall, El Paso, for appellees.

## OPINION

WARD, Justice.

This is an action for declaratory judgment filed by the surviving wife, Anna Wohlenberg, to determine the ownership of various items of property as being community or her separate property arising out of her marriage to Charles Wohlenberg. A cross-action was asserted by Fred H. Wohlenberg, as Executor of the estate of the deceased husband, against the surviving wife as well as a third party action against Mutual Federal Savings and Loan Association of El Paso. The Executor has appealed.

Anna Wohlenberg was married to Charles H. Wohlenberg on April 24, 1944, and lived together as husband and wife until his death in April, 1969. They had no children. Charles Wohlenberg left a will which has been admitted to probate and it provided that all of his estate was to go to his brother, Fred Wohlenberg and his sister, Margaret Cox. The case was tried to the Court without a jury and extensive findings of fact and conclusions of law were filed. These findings and conclusions deal with the determination of whether certain property of the decedent, Charles Wohlenberg, was his separate property which passed to the Appellant under the will, whether the property was the separate property of the wife which she would retain or whether the property in question was community of the husband and wife which would then be divided equally between the Executor and Anna Wohlenberg. We might comment that on certain points, the problem is complicated because of the scarcity of positive evidence.

The trial Court determined that an account in the name of the wife at Mutual Federal Savings and Loan Association at the date of the death belonged to the separate property of the wife to the extent of $8,954.93 and to the community to the extent of $1,277.50. The account was initially opened in February, 1945, by the wife, in the name of Mrs. Anna Wohlenberg or Charles H. Wohlenberg; changed in May, 1952, to Mrs. Anna Wohlenberg; changed, again, in January, 1957, to Mrs. Anna or C. H. Wohlenberg, with right of survivorship; and finally changed either in January, 1962, or December, 1964, back to Mrs. Anna Wohlenberg. Only community funds were ever deposited into the account and the only signature cards ever on file with that Association were signed by Anna Wohlenberg. An officer for the Savings and Loan Association testified that because they never had a signature card signed by Charles Wohlenberg and since Mrs. Wohlenberg was the only one who had signed a signature card, she was the only one who could have added or removed Charles Wohlenberg's name from the account.

The officer stated that it was possible that if Mr. Wohlenberg had come to the Association and stated that he refused to have his name on the account, that "then an employee of the Association might have taken the name off of the account." Finally, it was testified that this latter possibility was contrary to the normal procedure of the Association as there was never a signature card on file from Mr. Wohlenberg.

The theory of the wife that a valid gift of the funds in the Association had been made to her in December, 1964, was founded on her testimony that she never removed her husband's name from the account and therefore it must have been Mr. Wohlenberg who removed his own name. She additionally testified that it was during a two month period of December, 1964, and January, 1965, that the husband was fearful of being sued and that he desired to protect his wife's financial position. The trial Court found as a fact that Charles H. Wohlenberg did, during the month of December, 1964, remove his name as a joint owner from the savings account with Mutual Federal Savings and Loan Association of El Paso, thereby leaving the account in the name of Anna Wohlenberg, solely, at which time the account had a balance of $8,954.93. The trial Court's conclusion is that as "a matter of law the sum of $8,954.93 of the savings account with the Mutual Federal Savings & Loan Association does constitute the separate property of Anna Wohlenberg resulting from a gift to her by her husband, the manager of the community, and the balance of said account constitutes community property."

◼ As to this Association account and the findings thereon, the Appellant addresses his first "no evidence" point. In considering this account where only community funds were deposited over the years, the general presumption in favor of the community is first presented. To rebut this, we have only the testimony that it was operated solely by the wife. There is no conduct or participation by the husband in the opening or changing of the account, the making of any deposit, nor is there any statement by him from which a clear and present purpose to make a gift of community property to the wife's separate estate could be determined. To support the alleged gift there must be a preponderance of evidence that the property was in fact given. Reed v. Reed et al., 283 S.W.2d 311 (Tex.Civ.App., Dallas, 1955, no writ); Speer, Marital Rights in Texas, Sec. 399 (4th ed. 1961). The record reflects no evidence that the husband ever removed his name from this account. The "possibility" testimony referred to amounts to none at all. Accordingly, we hold that all funds in the Association account at the date of the death of the husband were community property.

◼ The trial Court held that a savings account at the Américan Bank of Commerce in the name of Mrs. Anna Wohlenberg which was opened on December 28, 1964, by an initial deposit of $1,000.00 was the separate property of the wife to the extent of the initial $1,000.00. A small balance was held to belong to the community, being derived from interest on the deposit. The testimony concerning this account is to the effect that the husband told the wife that he was in trouble, that he was afraid that he would be sued, and that he opened the savings account at the bank himself solely in her name and made this original deposit, telling her at the time that because of his trouble that he didn't want her to be broke. The wife's contention of a valid gift was again attacked by the Appellant by the "no evidence" point. Again, the wife has the burden. The presumption concerning separate property status of bank accounts established by Article 4622, Vernon's Tex.Rev.Civ. Stat.Ann., has been held not to apply where the contest is between the spouses themselves or their successors. Hodge et al. v. Ellis, 154 Tex. 341, 277 S.W.2d 900 (1955). The same rule should apply to the Article as revised in 1967. It alone does not supplant the presumption that property acquired during the marriage is

community. Callaway et al. v. Clark et al., 200 S.W.2d 447 (Tex.Civ.App., Texarkana 1947, writ ref'd) ; Speer, supra, Sec. 394. But here we find that the wife has sustained her burden. Not only do we have the husband's own conduct in opening the account and making the deposit, we have the possession of the passbook by the wife which must have been delivered to her by the husband. In addition, we have the husband's statements evidencing a donative intent concerning $1,000.00 as belonging to the wife's separate estate. Teague et al. v. Fairchild et al., 15 S.W.2d 585 (Tex. Com.App.1929) ; Webb v. Webb et al., 184 S.W.2d 153 (Tex.Civ.App., Eastland 1944, writ ref'd).

▇▇▇ An identical fact situation exists as to a savings account opened by the husband in the wife's name at the First State Bank on January 29, 1965, with an initial deposit made by him of $1,000.00. However, a later deposit of $3,000.00 was made into this account by the wife with the knowledge and concurrence of the husband as he at that time transferred from their joint account at another bank to his own account at a Fort Worth bank the sum of $4,000.00. This was apparently done under the same circumstances where he felt he was in some sort of trouble. While the circumstances and the evidence surrounding the deposit of $3,000.00 are not strong toward establishing a gift to the wife's separate estate, we think the evidence raised a fact issue as to a gift and the Court's finding is binding on us. In addition, the trial Court was in error in partially excluding conversations between the husband and wife concerning these alleged gifts. Speer, supra, Sec. 398. The statements of the deceased donor were never challenged under Article 3716, Tex.Rev. Civ.Stat.Ann., and a complete waiver prevailed. The "no evidence" points concerning the savings accounts in the wife's name at both the American Bank of Commerce and the First State Bank are overruled.

▇▇▇ In a safety deposit box at The State National Bank of El Paso, which was solely in the name of the deceased husband, there were found certain shares of stock, issued to Charles H. Wohlenberg in July, 1954. These shares, issued in July, 1954, were admittedly the separate property of Mr. Wohlenberg as they came to him from the estate of his deceased mother. Additional shares of stock in the name of Charles H. Wohlenberg were also found in the same safety deposit box but these were issued to him at later dates. The Appellant contends that these additional shares were also the separate property of the husband as they were stock dividends received on the stock that originally came from the estate of the mother. A stock dividend normally is separate if the stock ownership out of which it springs is separate. Tirado v. Tirado, 357 S.W.2d 468 (Tex.Civ.App., Texarkana 1962, writ dism'd) ; Duncan v. United States, 247 F.2d 845 (5th Cir. 1957). To establish his position, the Appellant called the trust officer of the bank who originally inventoried the contents of tthe deposit box. By referring to Moody's Public Utility Manual and Moody's Industrial Manual he established that the additional shares of each stock matched to some extent the number of shares which would have been distributed to the husband by stock dividends both by number of shares and by date. Not only is direct evidence lacking that these additional shares were stock dividends, certain flaws are present in the offered testimony. Certain of the additional shares are admittedly unaccounted for under the Appellant's theory, while others are present that could have come about through the purchase by the deceased of rights or fractional shares. On the other hand, the wife offered no testimony as to the origin of these additional shares, her reliance being on the general and statutory presumption of community. Tex.Rev.Civ.Stat.Ann. art. 4619, as amended in 1967. The trial Court found that these so-called additional shares were community property as the testimony referred to was not sufficient to rebut the general presumption and the shares might well have been purchased by the husband

in the intervening years rather than acquired by him as stock dividends. This leads us to a consideration as to the quantum of proof necessary to overcome the presumption and also as to who has the burden of persuasion on this vital fact. See Speer, supra, Sec. 400; 1 McCormick & Ray, Texas Evidence, Sec. 116 (2d ed. 1956). In the first place the evidence offered by the Executor was not direct and positive, such as to cause the presumption of community to vanish. Robertson Tank Lines, Inc. v. Van Cleave et al., 468 S.W.2d 354 (Tex.1971). But if we be mistaken there, then the Appellant in this case has alleged that of the three possibilities as to this property, it was his, not hers nor theirs. Under our facts, the burden of proof or more specifically the burden of persuasion is on the Appellant. Kitchens et al. v. Kitchens et al., 372 S.W.2d 249 (Tex.Civ.App., Waco 1963, writ dism'd). The Appellant has the burden of persuasion on the vital fact and there has been a negative finding. The "no evidence" point presented on appeal is that the evidence establishes conclusively or as a matter of law that the additional shares are the husband's separate property. With this contention we disagree, even without the presumption. The point is overruled.

■  The proceeds of two life insurance policies on the life of the husband, one in the amount of $4,000.00, issued by Great Southern Life Insurance Company, and the other in the amount of $4,900.00, issued by Southwestern Life Insurance Company, were paid to the wife as the named beneficiary. Testimony to this effect was introduced without objection. Complaint is now before us that there is no record as to when the policies were taken out, and that a portion of these policies could have been taken out before marriage. The presumption of community controls. Regardless, a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured. Brown et al. v. Lee et al., 371 S.W.2d 694 (Tex.1963);

Davis v. Prudential Insurance Company of America et al., 331 F.2d 346 (5th Cir. 1964). The Appellant's complaint as to these two policies is overruled.

■  Certain stipulations as to evidence were entered into by the parties concerning a New York Life Insurance Company annuity. A retirement annuity was purchased by Mr. Wohlenberg on July 28, 1934. He paid an annual premium of $150.-00 per year and the annuity matured on July 28, 1958. On the maturity date, Mr. Wohlenberg had the privilege of receiving a life income under the anunity or he could avail himself of certain optional methods of settlement. He chose the latter and requested the company to hold the proceeds on deposit at interest. A supplemental contract was then issued to him showing that he then had on deposit $4,997.97, that the fund would thereafter draw interest at amounts to be determined by the company, but not less than 3% per annum, and that any balance in the account on the date of his death would be payable to the executor of his estate. The balance at the time of death was the sum of $7,009.59 and it was paid to the executor on this contract. The trial Court found as a fact that the contract was in existence prior to the marriage which occurred on April 24, 1944; that a total of $1,350.00 had been invested by the husband at that time; and that the balance of $5,659.59 on the contract represented either community sums invested subsequent to the date of the marriage or represented interest paid on the total investment. The Court thereupon concluded that the sum of $1,350.00 constituted separate property of the deceased and that the balance of $5,659.59 constituted community property. The point of error is in doubt but the contention is made that the entire proceeds are separate with the community entitled to reimbursement on the basis of community proceeds that were paid as premiums. This would follow the inception of title doctrine as emphatically applied to life insurance policies and real estate acquisitions. McCurdy v. McCurdy, 372 S.W.2d

381 (Tex.Civ.App., Waco 1963, writ ref'd); Comments, 18 Sw.L.J. 521; 42 Texas L. Rev. 747. The right of reimbursement is conceded by the Appellant. With this in mind and in view of the fact that we do not have the terms of the original contract before us nor evidence of its value at the time of marriage, we see nothing inequitable in the way that the trial Court treated the asset. The accumulation created after maturity of the original contract was community as it was merely interest on an investment. The annuity was a form of an investment and the treatment under the present facts is in accord with a comparable treatment of a savings account. The point raised as to the New York Life Insurance Company annuity is overruled.

■ A cross-action was filed by the Executor against the wife alleging that she had breached her agreement that she entered into after her husband's death wherein for certain concessions made to her she had dismissed a will contest. Therein she promised to reveal all assets under her control and she would work in good faith to identify each item as separate or community to effect an orderly distribution of the estate. The trial Court in its judgment denied the cross-action, concluding that the cross-action for breach of contract was not supported by the evidence and that the request for actual and exemplary damages was not supported by the evidence. We have carefully reviewed the point made and without prolonging the discussion we find it is without merit.

■ An additional third party action was filed by the Executor against Mutual Federal Savings and Loan Association on the theory that the Association was negligent in permitting Mrs. Anna Wohlenberg to change the names and to withdraw funds from the passbook account over the years and in permitting the account to be opened with community funds without a partition agreement. The trial Court de-termined there was no negligence present. Again, without prolonging the discussion, we find no error in the trial Court's action. Tex.Rev.Civ.Stat.Ann. art. 852a, Sec. 6.07 and 6.08; Davis v. East Texas Savings & Loan Association of Tyler, Texas et al., 163 Tex. 361, 354 S.W.2d 926 (1962). We are not advised and we fail to see how the statute as to a partition could create a liability on the Association.

■ Complaint is made that the trial Court overruled the Executor's First Motion for Continuance, which was based on the claimed fact of surprise that the Executor had never been placed on notice that the so-called additional shares of stock previously mentioned would be claimed by the wife as community assets. The motion for continuance was filed the morning of the trial, yet two months before and in pursuance to a court order the wife had filed an inventory where her claim of community was set forth. Due diligence is not shown.

We have considered each of the remaining points made by the Appellant and being of the opinion that they are without merit they are overruled.

The judgment of the trial Court is in all things affirmed except for that part of the trial Court judgment which awarded to Anna Wohlenberg as her separate property the sum of $8,954.93 which was on deposit at Mutual Federal Savings and Loan Association in the name of Mrs. Anna Wohlenberg at the date of the death of her husband. The said sum of $8,954.93 is declared to be community property belonging equally to Mrs. Anna Wohlenberg and to the Estate of Charles H. Wohlenberg, Deceased, and to that extent only the judgment of the trial Court is reversed and is here rendered. Costs as assessed in the trial Court are affirmed and costs on appeal are assessed two-thirds against the Appellant and one-third against the Appellee, Anna Wohlenberg.